NO. 13-4645

_____

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

UNITED STATES OF AMERICA,

Appellee,

v.

DANIEL MURRAYE,

Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION
_____

BRIEF OF APPELLEE
_____

WILLIAM N. NETTLES
UNITED STATES ATTORNEY

E. JEAN HOWARD
Assistant United States Attorney
55 Beattie Place, Suite 700
Greenville, South Carolina 29601

ATTORNEYS FOR APPELLEE

TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ................................................................. ii, iii

STATEMENT OF SUBJECT MATTER AND APPELLATE
          JURISDICTION ............................................................................1

STATEMENT OF THE ISSUES....................................................................2

STATEMENT OF THE FACTS ............................................................3, 4, 5, 6, 7

SUMMARY OF THE ARGUMENT ........................................................8

ARGUMENT .................................................................................passim

          I.    WHETHER THE DISTRICT COURT PLAINLY ERRED
                IN ACCEPTING THE GUILTY PLEA OF MURRAYE.

CONCLUSION ..............................................................................20

CERTIFICATE OF COMPLIANCE....................................................21

CERTIFICATE OF SERVICE ...........................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>**CASES**</u>                                                                    PAGE

*United States v. Attar*, 38 F.3d 727, 731-32 (4th Cir. 1994) ...............................9, 11

*United States v. Blick*, 408 F.3d 162, 168 (4th Cir. 2005).................................9, 10

*United States v. Broughton-Jones*, 71 F.3d 1143, 1146 (4th Cir. 1995) ...............11

*United States v. Cotal-Crespo*, 47 F.3d 1, 8 (1st Cir. 1995) ...................................13

*United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992)...............................10, 11

*United States v. DeFusco*, 949 F.2d 114, 116 (4th Cir. 1991)..................................13

*United States v. Dominguez Benitez,* 542 U.S. 74, 85 (2004) ................................19

*United States v. Enamorado-Ramirez*, 423 Fed. Appx. 263 (4th Cir. 2011)...........13

*United States v. General*, 278 F.3d 389, 400 (4th Cir. 2002)..................................10

*United States v. Hairston*, 522 F.3d 336, 341 (4th Cir. 2008)..................................17

*United States v. Hughes*, 401 F.3d 540, 547-48 (4th Cir. 2005) ........................13, 19

*United States v. Ketchum,* 550 F.3d 363 (4th Cir. 2008)..........................................16

*United States v. Manigan,* 592 F.3d 621, 627 (4th Cir. 2010)....................................9

*United States v. Martinez*, 277 F.3d 517, 525-527 (4th Cir. 2002) .........................12

*United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992)...............................11, 12

*United States v. Massenburg*, 564 F.3d 337, 343 (4th Cir. 2009) ..............17, 18, 19

*United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997) ...................................16

*United States v. Olano*, 507 U.S. 725, 731-32 (1993) .......................................13, 19

*United States v. Wessells*, 936 F.2d 165, 168 (4th Cir. 1991) .................................12

**STATUTES**

18 U.S.C. § 3742 ..............................................................................................1, 4

21 U.S.C. § 841(a)(1) ..............................................................................................3

21 U.S.C. § 841(b)(1)(A) ........................................................................................3

21 U.S.C. § 846 .......................................................................................................3

28 U.S.C. § 1291 .....................................................................................................1

28 U.S.C. § 2255 .........................................................................................4, 7, 9, 11

**GUIDELINES**

U.S.S.G. § 5K1.1 ....................................................................................................5

**RULES**

Fed. R. Crim. P. 11 ..........................................................................................passim

Fed. R. Crim. P. 35 .................................................................................................5

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This appeal arises from the criminal prosecution of Derrick Jermaine McGee in the District of South Carolina and this Court has appellate jurisdiction under Title 28 U.S.C. § 1291 and jurisdiction over an appeal of the sentence under Title 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

**I.**      **Whether Murraye waived his right to appeal.**

**II.**     **Whether the district court plainly erred in accepting the guilty plea of Murraye.**

2

## STATEMENT OF THE FACTS

On August 9, 2011, a federal grand jury returned a 45 count Indictment charging Murraye and others with Conspiring to Possess with the Intent to Distribute 5 kilograms or more of cocaine and 280 grams or more of "crack" cocaine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846. Murraye was charged in the conspiracy count and 6 counts of distribution of a quantity of crack cocaine.

The case orginated from citizen complaints of heavy drug usage and drug sales in the Judson and Sterling communities of Greenville, South Carolina. In September, 2009, a confidential informant (CI) met with law enforcement and advised that he had lived in the area for nine years and was involved in selling illegal drugs. From November 24, 2009, until January 20, 2011, law enforcement utilized this CI and another individual to make seven controlled purchases of crack cocaine from Murraye. These purchases took place within the Judson/Sterling area and, on several occasions, a known drug house used by Murraye and codefendants located at 112 Heatherly Drive. On one occasion, arrangements were made to purchase crack from Murraye's codefendant, Travis Deprince Moon. However, when Moon did not have enough crack to supply the CI, he directed the CI to Murraye. (JA sealed 128-133). On October 26, 2011, Murraye was interviewed

3

by law enforcement and admitted to buying and selling crack cocaine. He named a number of individuals who he both bought and sold crack cocaine with beginning in January 2009. Among those he admitted to being in business with included his codefendant Derrick McGee. (JA sealed 130).

On December 20, 2011, Murraye, along with codefendant James Whitner, pled guilty pursuant to a written plea agreement before the Honorable G. Ross Anderson. In his plea agreement, Murraye agreed to plead guilty to Count 1 (the drug conspiracy charge) and to waive his rights to attack his conviction and sentence unless either was the result of prosecutorial misconduct or ineffective assistance of counsel. (JA 25). Specifically, the appellate waiver contained within the plea agreement read:

> The Defendant is aware that 18 U.S.C. § 3742 and 28 U.S.C. § 2255 afford every defendant certain rights to contest a conviction and/or sentence. Acknowledging those rights, the Defendant, in exchange for the concessions made by the Government in this Plea Agreement, waives the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceedings under 28 U.S.C. § 2255. This waiver does not apply to claims of ineffective assistance of counsel or prosecutorial misconduct. This Agreement does not affect the rights or obligations of the Government as set forth in 18 U.S.C. § 3742(b). Nor does it limit the Government in its comments in or responses to any post-sentencing matters.

(JA 25).

In exchange, the government agreed to dismiss the remaining counts of the

4

indictment currently pending against Murraye. (JA 18). The agreement also contained provisions permitting Murraye to cooperate with authorities in order to earn reduction in his sentence pursuant to Rule 5K1.1, United States Sentencing Guidelines, or Rule 35, Fed. R. Crim. P. (JA 20-22).

The plea agreement was reviewed during the plea hearing. (JA 54-59). When questioned by the court, Murraye agreed that the plea agreement was stated properly. The court accepted the plea agreement as being fair to the defendant and fair to the U. S. government and made it a part of the record. (JA 59).

The day before the guilty plea hearing, December 19, 2011, Murraye and his attorney executed a 16 page Petition to Enter a Plea of Guilty ("the Petition"). The Petition is used by the district court in conjunction with the oral Rule 11 plea colloquy. (JA 77-92). The Petition exhaustively covers a defendant's background and constitutional rights. It further details the possible penalties, the function of the advisory Guidelines, and the voluntary nature of the plea.

The full Petition was published in open court as part of the plea colloquy. At the end of this process, the district judge asked the goverment to state what evidence they would prove. The government referenced individuals that had previously pled guilty before the court relating to an investigation by the FBI and Greenville County Sheriff's Office of illegal drug and gang activity in the Sterling

5

and Judson communities of Greenville. These individuals provided information about illegal drug sales including the involvement of both Murraye and Whitner. A number of controlled purchases were made from both Murraye and Whitner. Historical information outlined that both Whitner and Murraye bought and sold crack cocaine to others in the conspiracy and that the weight attributable to each of them was more than 280 grams of crack cocaine. (JA 61-62). When the district judge questioned Murraye whether the government's statement was correct, he replied, "Yes, sir." (JA 62).

The district court also asked Murraye to tell him briefly what he did. Murraye responded "I agreed to sell illegal drugs and I did sell them crack cocaine." When further questioned about how much, Murraye replied, "280 grams." (JA 65-66).

Thereafter the district court made a finding that there was evidence beyond a reasonable doubt to convict and declared the defendants guilty. After no objections were heard, the defendants signed a written plea of guilty. (JA 70). The district court and defense counsel discussed Murraye's custody status and defense counsel's request that he be allowed to stay in Anderson. (JA 71-72).

At Murraye's sentencing hearing on March 19, 2012, his grandmother, father, aunt, sister and fiancée all appeared and were recognized by the district

6

court.  (JA 97).  Murraye addressed the court stating he was sorry and had learned his lesson.  (JA 98).  Notably, Murraye did not move to withdraw his guilty plea. He was sentenced to the statutory minimum sentence of 120 months imprisonment, followed by 5 years of supervised release.  The judgment was entered on March 23, 2012.   Thereafter, on March 18, 2013, Murraye filed a motion to vacate under Title 28, U.S.C. § 2255, challenging whether counsel was ineffective for failing to file a notice of intent to appeal.  The government opposed the 2255 motion and moved for summary judgment.   On July 22, 2013, the district court granted Murraye's motion, directed that judgment be reimposed and allowed Murraye 14 days to file a notice of intent to appeal.  (JA 109).  Thereafter Murraye filed a timely notice of intent to appeal.

## SUMMARY OF THE ARGUMENT

Murraye waived his right to appeal his sentence when he executed a written plea agreement that contained an appellate waiver. (JA 25.) The appellate waiver is valid and should be enforced both because Murraye's appeal fits squarely within the scope of the waiver in the plea agreement, and because the district court's specific inquiry of Murraye about the plea agreement including the appellate waiver demonstrates he knowingly and intelligently agreed to the waiver. Further, there was no plain error in the district court's plea proceeding. The requirements of the Rule 11 were met through the written Petition, written plea agreement, publication of the Petition in open court, and the district judge's questioning and interaction with Murraye. Even if Murraye could establish an error, he cannot show that, but for the error, he would have chosen a trial. Murraye never sought to withdraw his plea, the government's evidence against him was overwhelming, and he made no claims of actual innocence.

## ARGUMENT

## I.   MURRAYE'S APPELLATE WAIVER IS VALID AND ENFORCEABLE.

### A.   Standard of Review

Pursuant to a plea agreement, a defendant may waive his appellate rights. *United States v. Manigan,* 592 F.3d 621, 627 (4th Cir. 2010). A waiver will preclude appeal of a specific issue if the waiver is valid and the issue is within the scope of the waiver. *United States v. Blick*, 408 F.3d 162, 168 (4th Cir. 2005). The question of whether a defendant validly waived his right to appeal is a question of law that this court reviews de novo. *Manigan,* 592 F.3d at 626.

### B.   Discussion of Issue

Murraye has appealed his sentence, and this appeal falls squarely within the appellate waiver provision of his plea agreement.  Specifically, Murraye waived "the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including proceedings under 28 U.S.C. § 2255." (JA 25.)

The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. *United States v. Attar,* 38 F.3d 727, 731-32 (4th Cir. 1994).  Although this determination is often made based on the adequacy of the plea colloquy-specifically, whether the district court questioned the defendant about the appeal waiver-the issue ultimately is

"evaluated by reference to the totality of the circumstances." *United States v. General,* 278 F.3d 389, 400 (4th Cir. 2002).   Thus, the determination "must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *United States v. Davis,* 954 F.2d 182, 186 (internal quotation marks and citation omitted)(4th Cir. 1992). *United States v. Blick,* 408 F.3d 162, 169 (4th Cir. 2005).

The record in this case fully establishes that Murraye knowingly and intelligently waived his right to appeal.  The language and meaning of the appeal waiver and the plea agreement as a whole is clear and unmistakable, and both Murraye  and his attorney represented by their signatures to the plea agreement that Murraye had been fully advised about, and understood, its terms.  In addition to the written plea agreement, Murraye and his attorney executed a Petition to Enter a Plea of Guilty which further addressed the waiver of appellate rights.  (JA 89-90).

Murraye was 23 years old with a ninth grade education, and he was represented by counsel with whom he was fully satisfied.  He acknowledged that he had been provided with ample opportunity to discuss his case with his attorney. (JA 39-40.)  Additionally, the appeal waiver was described in the plea agreement in  direct, unambiguous language.   Moreover the Petition addressed several questions  relating  to  the  waiver.   During  the  plea  colloquy,  the  government summarized the plea agreement stating the defendant "waive[s] the right to contest

10

either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceedings under Title 28, United States Code, Section 2255. This waiver does not apply to claims of ineffective assistance of counsel or prosecutorial misconduct." (JA 57.) The court questioned Murraye if the plea agreement was summarized correctly to which Murraye responded "Yes, sir." (JA 57.) The plea colloquy continued with the government reviewing the provisions of the Petition to Enter a Guilty Plea describing in detail the appellate waiver and the consequences of the waiver. The district court again addressed Murraye and questioned if the plea agreement was stated properly to which Murraye again responded, "Yes, sir." (JA 59.) The court then made the plea agreements part of the record accepting "the plea agreement as being fair to the defendant and fair to the U.S. government." (JA 59.) Following pronouncement of Murraye's sentence, the court did not provide Murraye with a notice of right to appeal. (JA 100-102.)

Although the district court did not inquire specifically into Murraye's understanding of the waiver provision during the plea colloquy, this factor does not invalidate the appeal waiver. See, e.g., *United States v. Broughton-Jones*, 71 F.3d 1143, 1146 (4th Cir. 1995) (waiver valid in absence of inquiry about defendant's understanding of the provision); *Attar,* 38 F.3d at 732 (same); *Davis*, 954 F.2d at 186 (same). In *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992), this Court stated that a failure by the district court to question the defendant specifically

11

about an appeal waiver provision during a plea colloquy warrants a finding that the waiver is not knowing and voluntary "only if the record indicates that the defendant did not otherwise understand the full significance of the waiver." As support for this rule, the Court cited to *United States v. Wessells*, 936 F.2d 165, 168 (4th Cir. 1991). In that case, not only did the district court decline to question the defendant about the appeal waiver, but also defense counsel told the court he had advised the defendant that his waiver would not prevent an appeal based on an improper application of the guidelines. Thus, in *Wessells,* the record affirmatively established a misunderstanding on the part of the defendant. No such circumstance exists in this case. Under the standard set forth in *Marin*, Murraye has failed to show that his waiver was not made knowingly and intelligently. Because Murraye knowingly and voluntarily waived his right to appeal his sentence, his appeal should be dismissed.

## II. THE DISTRICT COURT DID NOT PLAINLY ERR IN ACCEPTING THE GUILTY PLEA OF MURRAYE.

### A. Standard of Review

Because Murraye did not move in the district court to withdraw his guilty plea, the propriety of his Rule 11 hearing is reviewed for plain error. *United States v. Martinez,* 277 F.3d 517, 525-27 (4th Cir. 2002). To demonstrate plain error, an appellant must establish that an error occurred, that it was plain, and that it affected

his substantial rights. *United States v. Olano*, 507 U.S. 725, 731-32 (1993); *United States v. Hughes*, 401 F.3d 540, 547-48 (4th Cir. 2005). If an appellant meets these requirements, the court's "discretion is appropriately exercised only when failure to do so would result in a miscarriage of justice, such as when the defendant is actually innocent or the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Hughes*, 401 F.3d at 555 (internal quotation marks and citation omitted).

### B.    Discussion of the Issue

"In reviewing the adequacy of compliance with Rule 11, this Court should accord deference to the trial court's decision as to how best to conduct the mandated colloquy with the defendant." *United States v. DeFusco*, 949 F.2d 114, 116 (4th Cir. 1991). It is the practice of the trial judge in this case to use a Petition to Enter a Plea of Guilty ("the Petition") as part of the Rule 11 process. (JA 77.) This Court has reviewed and rejected similar claims that use of the Petition runs afoul of Rule 11 because it supposedly detracts from the interaction between the court and the defendant. See *United States v. Enamorado-Ramirez*, 423 Fed. Appx. 263 (4th Cir. 2011); see also *United States v. Cotal-Crespo*, 47 F.3d 1, 8 (1st Cir. 1995) (holding that district court's use of a written document in conjunction with oral colloquy satisfied Rule 11's requirements).

13

Prior to the change of plea hearing, Murraye and his lawyer executed a 16-page Petition. Section A of the Petition consists of 11 questions and requires a defendant to disclose background information such as age, employment, educational level, and medical or psychiatric issues. (JA 77-79.) Section B sets forth rights that a defendant must give up before pleading guilty such as a speedy trial, the right to call witnesses, and the right to be presumed innocent until proven guilty. (JA 79-81.) Section C deals with sentencing in general and covers such matters and the maximum penalties, supervised release, and forfeiture. (JA 81-83.) In Section D, the defendant is advised of the advisory nature of the Guidelines and other things that influence the sentencing process. (JA 84-87.) Section E concerns the voluntary nature of the plea and queries about any promises, threats, or coercion related to the decision to plead guilty. (JA 88-90.) In the final section, the defendant puts in writing what he did to commit the offense that he is pleading guilty to. (JA 90-91.) The defendant signs the Petition and defense counsel certifies that the defendant's answers to the questions in the Petition are true. (JA 92-93.) In addition to answering all the questions, both Murraye and defense counsel initialed each page of the Petition indicating that had read each page.

In the present case, the plea colloquy began with defense counsel stating his name, introducing Murraye, stating that Murraye was charged with drug conspiracy, advising that Murraye had entered into a plea agreement and that they

14

had completed the petition to enter a guilty plea. (JA 30.) Murraye, along with other defendants entering guilty pleas, were then sworn. Next, the AUSA published the indictment, elements of the offense, and maximum penalties. (JA 32-34.) Defense counsel summarized the background information contained in section A of the Petition. The AUSA then read each question in the Petition and published the recorded responses. In addition to publishing the Petition, the government summarized the plea agreement filed in the case and Murraye agreed it was stated properly. At the end of this process, the district judge asked the government to state the evidence in the case and asked Murraye if it was stated correctly, to which Murraye replied, "Yes, sir". (JA 61-62.) Once the government completed the factual presentations, the district judge asked whether Murraye disagreed with the government's version of what it would offer by way of evidence. Murraye replied, "No, sir." (JA 65.) In further questioning, the district judge asked Murraye what he did. Murraye replied, "I agreed to sell illegal drugs and I did sell them crack cocaine." The judge asked him how much and Murraye stated "280 grams". (JA 65-66.) The district judge made a finding that there was evidence beyond a reasonable doubt to convict and declared all the defendants pleading before him guilty. Murraye then signed a written plea. (JA 70.)

Murraye argues his guilty plea was not entered into freely and voluntarily because of multiple Rule 11 violations. Specifically, Murraye contends the district

judge failed to personally address him in order to make sure he understood his rights and the nature and the elements of the charges against him.  Murraye also alleges the district judge accepted his plea without a factual basis.  <u>Appellant's Brief </u>at 19-20.

Murraye ignores that the Petition thoroughly covers the requirements of Rule 11.  The indictment, elements and possible penalties, including the mandatory minimum and statutory maximum sentence were all reviewed with Murraye during the guilty plea hearing.  In addition, the district court observed Murraye throughout the proceeding, the court engaged him in dialog about the offense, his plea agreement, how much drugs were involved, and the factual basis for the plea.

Murraye argues an insufficient factual basis for a violation of the charges was presented to the district court.  However, the district court has wide discretion in complying with Rule 11 and is not required to replicate the trial that the parties sought to avoid.  If the evidence submitted is sufficient to establish the elements of the charge, acceptance of the guilty plea is not an abuse of discretion.  *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997).  Further, a sufficient factual basis may be established from anything that appears on the record.  *United States v. Ketchum*, 550 F.3d 363 (4th Cir. 2008).  When questioned by the district judge about what he did Murraye stated, "I agreed to sell illegal drugs and I did sell them crack cocaine."  (JA 65.) In answer to the district judge's inquiry about how much,

Murraye responded "280 grams". (JA 66.) Although brief, these statements, along with the government's rendition of the evidence, clearly establish the elements of conspiracy. Additionally, when interviewed by law enforcement Murraye admitted to his involvement in the conspiracy. The presentence report outlines Murraye's involvement including selling crack with other members of the conspiracy from the Heatherly Drive crack house. (JA sealed 130).

Accordingly, there was no error—plain or otherwise—in the Rule 11 colloquy. The requirements of the Rule were met through the written Petition, publication of the Petition in open court, and the district judge's questioning and interaction with Murraye.

Of course, even if Murraye could show there was an error, he would be unable to establish that his substantial rights were affected. In the Rule 11 context, an appellant "must show a reasonable probability that, but for the error, he would not have entered the plea." _United States v. Massenburg_, 564 F.3d 337, 343 (4th Cir. 2009) (internal quotation marks omitted). "The overarching inquiry is whether there is a reasonable probability that the defendant would not have pleaded guilty had there been no Rule 11 error." _United States v. Hairston_, 522 F.3d 336, 341 (4th Cir. 2008).

After being sentenced to 120 months (the statutory minimum), Murraye made no protestations that he would have gone to trial instead of pleading guilty.

17

See *Massenburg*, 564 F.3d at 342 (noting that statements made after sentencing expressing a desire for a trial are relevant for the appellate court to consider). Such silence in the record is properly considered by this Court. It is unconvincing that after receiving the mandatory minimum sentence, Murraye would have opted to go to trial instead of pleading guilty.

Moreover, Murraye never filed a motion to withdraw his plea. This Court has held that the failure to file such a motion "is some evidence that [the Appellant] would have entered the plea regardless." Id. Again the evidence reflects that Murraye admitted his involvement in the conspiracy and received the mandatory minimum sentence. Given these facts, any effort on behalf of Murraye to withdraw his guilty plea would have little likelihood of success.

The evidence against Murraye was strong. Murraye agreed to the factual presentation where the government recounted that Al Logan and Michael Anthony McDowell had previously entered guilty pleas before the district judge and then provided information relating to both Murraye and Whitner and their involvement in illegal drug activity in the Sterling and Judson communities of Greenville. Other information provided that Murraye and Whitner purchased and sold to others in the conspiracy and that the drug weight attributable to them was more than 280 grams of crack. (JA 61-62.) Importantly, Murraye confessed his involvement to law enforcement. (JA sealed 130.) In answer to question 53 of his Petition, which

reads "State what you did to commit the offense to which you are now pleading GUILTY" Murraye responds "Agreed to sell illegal drugs and sold them." (JA 91.) "Under these circumstances, we think we can legitimately question what [Murraye] would have to gain by going to trial." *Massenburg*, 564 F.3d at 344; <u>Cf.</u> *United States v. Dominguez Benitez*, 542 U.S. 74, 85 (2004) ("When the record made for a guilty plea and sentencing reveals evidence, as this one does, showing both a controlled sale of drugs to an informant and a confession, one can fairly ask a defendant seeking to withdraw his plea what he might ever have thought he could gain by going to trial.").

Finally, even if Murraye could satisfy the *Olano* elements, this Court's "discretion is appropriately exercised only when failure to do so would result in a miscarriage of justice, such as when the defendant is actually innocent or the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Hughes*, 401 F.3d at 555 (internal quotation marks and citation omitted). Nowhere does Murraye claim that he is actually innocent of the crime for which he was indicted. He is clearly guilty. Considering the lengthy Petition that he filled out with the assistance of counsel, the full disclosure of the contents of the Petition in open court, and his dialog with the district judge, any error cannot be said to seriously affect the fairness, integrity or public reputation of judicial proceedings.

## CONCLUSION

For the foregoing reasons, there was no plain error in the Rule 11 colloquy.

This Court should affirm the district court in all respects.


WILLIAM N. NETTLES
UNITED STATES ATTORNEY


BY:    s/E. Jean Howard
       E. Jean Howard
       Assistant United States Attorney
       55 Beattie Place, Suite 700
       Greenville, South Carolina 29601
       (864) 282-2100

       ATTORNEYS FOR APPELLEE

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

No. _____    Caption: _United States of America vs. Daniel Murraye_

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

*[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines; Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines; any Reply or Amicus Brief may not exceed 7,000 words or 650 lines; line count may be used only with monospaced type]*

[X]    this brief contains _4,318_ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ]    this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App. 32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman or CG Times; 12-point font must be used with monospaced typeface, such as Courier or Courier New]*

[X]    this brief has been prepared in a proportionally spaced typeface using _Microsoft Word 2010 ,_ in _14 point Times New Roman_; or

[ ]    this brief has been prepared in a monospaced typeface using _____[*state name and version of word processing program*] with _____ [*state number of characters per inch and name of type style*].

s/E. Jeanne Howard
Assistant United States Attorney
Dated:_ April 15, 2014_

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NUMBER <u>13-4645</u> |
| | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL MURRAYE, | ) | |
| | ) | |
| Appellant. | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2014, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF user:

Charles Burnham, Esquire
1724 20th Street, N.W., Suite 304
Washington, DC  20009

<u>*s/E. Jeanne Howard*</u>
E. Jeanne Howard
Assistant U. S. Attorney

22